UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Rodney Maki,   File No. 22-cv-2887 (ECT/JFD)

    Plaintiff,

v.   **OPINION AND ORDER**

Federal Reserve Bank of Minneapolis,

    Defendant.

---

On May 21, 2025, the Court docketed an Opinion and Order resolving motions to exclude expert testimony and for summary judgment. ECF No. 114. On May 27, Defendant Federal Reserve Bank of Minneapolis moved to seal the Opinion and Order. ECF No. 115. The Bank "seeks to keep confidential three narrow categories of information: (1) details regarding law enforcement shifts and staffing at the Bank, (2) references to staffing of security posts at the Bank, and (3) discussion of modifications to the Bank's security protocols during the COVID-19 pandemic." ECF No. 116 at 4. In the Bank's view, "there are compelling national security and safety reasons" that justify preventing public "disclosure of information that could provide insights and impressions about the Bank's security, regardless of whether the information is about currently-in-force protocols." *See* ECF No. 105 at 3, 6, 8, 10, 15–16. If its motion is granted, the Bank proposes to "submit a confidential copy of the Order with the confidential portions marked for the Court's review." ECF No. 116 at 4 n.1. If the Court approves of the

proposed redactions, then the Bank proposes that the Opinion and Order be republished with the redactions. ECF No. 118. Mr. Maki opposes the motion. *See* ECF No. 119.

"There is a common-law right of access to judicial records." *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). The Supreme Court has explained that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon*, 435 U.S. at 597. "This right of access bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings, and to keep a watchful eye on the workings of public agencies." *IDT Corp.*, 709 F.3d at 1222 (citation modified). "It also provides a measure of accountability to the public at large, which pays for the courts." *Id.* It is true that the common-law right of access is "not absolute." *Id.* (quoting *Nixon*, 435 U.S. at 598). When it attaches, a court must decide "whether there [are] sufficient grounds to override the common-law right of access" that justify sealing the judicial record:

> Where the common-law right of access is implicated, the court must consider the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed.

*Id.* at 1223. The decision whether to provide access is "left to the sound discretion of the trial court . . . in light of the relevant facts and circumstances of the particular case." *Id.* (quoting *Nixon*, 435 U.S. at 599).

2

In balancing these interests, courts pay particular attention to whether and how the court used or relied on the at-issue material. "[T]he public's interest is stronger when the sealed items implicate a district court judge's exercise of Article III power in deciding a dispositive motion on the merits." *Laughlin v. Stuart*, No. 19-cv-2547 (ECT/TNL), 2021 WL 1338086, at *3 (D. Minn. Apr. 9, 2021) (quoting *Willis Elec. Co. v. Polygroup Ltd. (Macao Com. Offshore)*, No. 15-cv-3443 (WMW/KMM), 2019 WL 2574979, at *1 (D. Minn. June 24, 2019)). Courts should weigh "the role of the material at issue in the exercise of Article III judicial power and resultant value of such information to those monitoring the federal courts." *IDT Corp.*, 709 F.3d at 1224 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)); *see Schmidt v. DePuy Synthes Sales, Inc.*, No. 21-cv-2353 (NEB/DJF), 2024 WL 3565802, at *2 (D. Minn. July 29, 2024) (declining to seal information "necessary for a complete understanding" of the opinion). "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Amodeo*, 71 F.3d at 1049. The *Amodeo* court noted there was a strong justification for unsealing in a case where the judge "unambiguously stated that 'the documents now in question were material and important to my decision.'" *Id.* (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408–09 & n.5 (1st Cir. 1987)).

On the other side of the scale are "compelling reasons" for sealing a judicial record. *See Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018) ("The presumption of public access to judicial records may be overcome if the party seeking to keep the records under seal provides compelling reasons for doing so."); *In re Neal*, 461 F.3d 1048, 1053

3

(8th Cir. 2006) ("[O]nly the most compelling reasons can justify non-disclosure of judicial records." (quoting *In re Gitto Global Corp.*, 422 F.3d 1, 6 (1st Cir. 2005))). "Safeguarding the nation's security is unquestionably a compelling interest." *United States v. Rosales*, No. 10-cr-339(6) (PJS/JJK), 2012 WL 2923538, at *3 (D. Minn. July 18, 2012) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 598 n.24 (1980) (Brennan, J., concurring) ("For example, national security concerns about confidentiality may sometimes warrant closures during sensitive portions of trial proceedings, such as testimony about state secrets.")).

The Bank's motion will be denied. (1) The information subject to the Bank's motion was material and important to the decision denying the parties' competing summary-judgment motions. It figured centrally in deciding whether the Bank could accommodate Mr. Maki's religious objections to the Bank's COVID-19 vaccination policy without incurring undue hardship. Put another way, the rationale underlying the accommodation and undue-hardship analysis cannot realistically be understood without accessing this information.[1] (2) The Bank's national-security and safety concerns are not

---

[1] To recap, the Bank sought summary judgment on the ground that no staffing rearrangement could relieve Mr. Maki of his duties without an undue hardship. And the Bank opposed Mr. Maki's summary-judgment motion, in which Mr. Maki argued that that assigning him to a particular position at a particular time would not substantially increase the Bank's costs. These arguments relied on numerous facts about the Bank's staffing procedures, including the timing and number of officers' shifts. The parties' summary-judgment motions were denied (with respect to the Title VII claim) in large part because of factual disputes regarding whether Mr. Maki could maintain social distance on the job, whether a post or shift reassignment could have reduced his contact with other individuals, whether voluntary shift-swapping was possible, whether rearranging the scheduling and staffing system was costly, and whether all officer posts and shifts required Mr. Maki to maintain his core duties. *See* ECF No. 114 at 38–39.

clear or described specifically. How the Bank chose to staff security checkpoints—that is, the basic procedures the Bank followed, the equipment used to conduct screening, and the number of security personnel at each location—were visible to any member of the public who might have entered the Bank. If the Bank employed security procedures that were not publicly visible—like, for example, the "criteria that the TSA considers when assessing whether passengers should be subjected to additional screening" that the court addressed in *Rosales*, 2012 WL 2923538, at *2—the Bank has not identified them. Nothing like that was described or discussed in deciding the parties' summary-judgment motions. (3) If knowledge of the Bank's COVID-19-era security protocols might have threatened its security, that was in the past. The Bank has not explained how knowledge of those past protocols might threaten its security today or in the future. (4) Information the Bank seeks to seal was discussed during the hearing on the parties' motions. The hearing was public. No request was made to close the courtroom. The hearing's public nature confirms this information's non-seal-worthy character.[2]

---

[2]     No advance request was made to seal or redact all or parts of the Opinion and Order deciding the parties' motions to exclude and for summary judgment. Regardless, prior to docketing, the Court independently reviewed the record, determined that the Opinion and Order referenced materials sealed during discovery, and determined that those references did not warrant sealing or redacting the Opinion and Order. That determination was based on essentially the same considerations discussed above.

5

**ORDER**

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT** the Federal Reserve Bank of Minneapolis's Motion to Seal Opinion and Order [ECF No. 115] is **DENIED**.

Dated: June 4, 2025                                                   s/ Eric C. Tostrud
                                                                                  Eric C. Tostrud
                                                                                  United States District Court